IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Crim. No. 1:18-CR-0068 |
| | : | |
| v. | : | |
| | : | |
| **RALPH MCDANIEL GILES, SR.** | : | Judge Sylvia H. Rambo |

**M E M O R A N D U M**

Presently before the court is Defendant's motion to suppress, which seeks exclusion of a firearm and ammunition as a result of warrantless search of his rental vehicle, as well as statements made following his arrest. For the reasons stated herein, the motion will be denied.

**I.  Background**

On February 21, 2018, Defendant was charged in a single count indictment with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Doc. 1.) Defendant subsequently filed the instant motion to suppress evidence and statements. (Doc. 39.) Following briefing by both parties (Docs. 40 & 50), the court held an evidentiary hearing. Accordingly, the matter is ripe for disposition.

The court finds the following facts based upon the evidentiary hearing and submitted exhibits.[1] On September 12, 2017, York City Police officers Vincent

---

[1] Only Officer Monte's body camera video was submitted as evidence. Testimony was presented that Officer Kling learned that his body camera was not functioning properly when he went to

1

Monte ("Officer Monte") and Daniel Kling ("Officer Kling") were assigned to the Group Violence Intervention detail patrolling in a marked police car and full uniforms in the east and south ends of the city of York, Pennsylvania. At approximately 5:41 p.m., the officers were driving in the area of Edison and Pattison Streets when they passed a legally parked blue Kia Optima on Edison Street.[2] The officers noticed several men, including Defendant, sitting in and standing around the vehicle. Officer Kling stated in his report that he could smell the odor of marijuana coming from the area. When questioned at the hearing, Officer Kling clarified that he smelled burnt marijuana as they passed the Kia.[3] The officers circled the block to conduct a "mere encounter" with the individuals near the Kia. Upon arriving at the Kia, Officer Kling testified that he no longer smelled burnt marijuana.

Officer Monte parked parallel to the Kia in the middle of Edison Street so that no vehicles could traverse the drivable portion of the street. The Kia was partially

---

download the video following this incident. He lost all footage for September 12, 2017. According to Officer Monte, it is standard procedure to check and ensure the body camera is working properly prior to beginning an officer's shift. However, officers experience body camera errors on a weekly basis.

[2] In the Incident Report, Officer Kling stated that as they made the turn onto Pattison Street, they noticed and passed the Kia. (Def. Ex. 101.) At the evidentiary hearing, Officer Monte testified regarding their path of travel, in addition to identifying their route on a map. (Def. Ex. 104(a).) Contrary to Officer Kling's report, Officer Monte testified that the Kia was parked on Edison Street, which is also consistent with Officer Monte's body camera footage (Govt. Ex. 1).

[3] Officer Kling testified that he believed Officer Monte also smelled marijuana as they passed the Kia, which is why they planned to circle back to the vehicle. Conversely, Officer Monte testified that he did not smell the odor of marijuana when they first passed the Kia, nor when they returned to talk to Defendant and the other individuals.

blocked-in – there were vehicles parked behind but not in front of the Kia. As he pulled up and exited his vehicle, Officer Monte began speaking with the individual sitting in the driver seat of the Kia, R.G., Defendant's son ("R.G."),[4] regarding the work of the Group Violence Intervention detail due to the recent shootings in that area. At this time, Defendant was standing outside of the open front passenger door, Malik Moye ("Moye") was sitting in the rear passenger side seat with the door slightly ajar, and Reginald Quick ("Quick") was standing near the rear passenger side of the Kia.[5] Officer Kling exited the police vehicle with Officer Monte and walked around the front of the Kia to the passenger side. While Officer Monte was speaking with R.G., Officer Kling looked into the rear passenger side of the Kia, opened the door, and requested Moye step out of the Kia. Officer Kling testified that he initiated Moye's detention after seeing a clear plastic bag filled with raw marijuana in plain view in the seat-back pocket in front of Moye. He knew it was marijuana based on its appearance and texture, and the fact that he smelled marijuana during the original drive-by. However, Officer Kling could not detect the odor of the raw marijuana until he removed it from the Kia.

Because of the marijuana, Officer Monte detained Defendant and Officer Mayberry, who previously arrived on the scene, began to detain R.G. As he was

---

[4] At the time of the incident, R.G. was a minor.

[5] Defendant and all other individuals were not identified until after they were detained.

3

detaining Defendant, Officer Monte announces "10-32" to indicate that he saw a firearm to the other officers. Defendant was immediately placed under arrest and given his *Miranda* warning. When Office Monte asked Defendant about the firearm visible on the front passenger side floor, Defendant responded, "that's his," referring to Moye. Defendant admitted that the Kia was his rental vehicle but denied that the gun belonged to him. Officer Mayberry also located a small amount of marijuana that R.G. tossed on the floor before being detained. Following a search of the Kia, no other contraband was located, particularly, there was no evidence of burnt marijuana in or around the vehicle. Subsequent to his arrest but prior to being booked, Defendant answered additional questions regarding the firearm and consistently denied that it belonged to him.

## II. Discussion

In his motion to suppress, Defendant argues that a reasonable person would not have believed he was free to leave when the police parked next to the Kia and, at that moment, Defendant was seized. However, the officers had no reason to believe Defendant was engaging in any criminal activity making the seizure unlawful. Defendant further contends that any statements he made following his unlawful detention should be suppressed as fruits of the poisonous tree. Conversely, the Government argues that Defendant was not seized when Officers Monte and Kling parked next to the Kia, rather, they engaged in a causal, relaxed conversation

4

about violence in the neighborhood. Once Officer Kling noticed the bag of marijuana in plain view, the officers had reasonable suspicion to detain Defendant, and did so at that moment. The Government further contends that the arrest that followed was based on probable cause after locating the firearm.

The Fourth Amendment to the United States Constitution grants individuals the right "to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The United States Supreme Court has repeatedly held that "[t]he touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). "Police encounters with citizens fall into one of three broad categories, each with varying degrees of constitutional scrutiny: '(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests.'" *United States v Brown*, 765 F.3d 278, 288 (3d Cir. 2014) (quoting *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006)). The first type of interaction, *i.e.* a mere encounter, does not implicate the Fourth Amendment. *Id.*; *Florida v. Bostick*, 501 U.S. 429, 434 (1991). However, a brief seizure or investigatory detention requires "reasonable, articulable suspicion that criminal activity is afoot," while a full-scale arrest necessitates probable cause. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *Brown*, 765 F.3d at 288.

The court must first determine whether a seizure has occurred and, if so, when it occurred. *Brown*, 765 F.3d at 288. A Fourth Amendment seizure "does not occur simply because a police officer approaches an individual and asks a few questions." *Id.* (quoting *Bostick*, 501 U.S. at 434). Rather, "[a] seizure occurs only 'when [a police officer], by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Id.* (quoting *United States v. Crandell*, 554 F.3d 79, 84 (3d Cir. 2009)). An objective test is applied to evaluate whether a police officer's "show of authority" would lead a reasonable person to believe he was not free to leave. *Id.* (citing *Crandell*, 554 F.3d at 84). Several factors should be considered as part of this objective inquiry, including, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 544-55 (1980).

In this case, the court is skeptical that Officer Kling detected the odor of marijuana coming from the Kia but, regardless, Officers Monte and Kling could conduct a mere encounter without reasonable suspicion. The officers approached the group in a conversational manner discussing the Group Violence Intervention program. Officer Monte did not block the Kia from driving away, nor did any officer use physical force to detain Defendant at that time. While there were two officers at

the scene, there were four individuals standing around or sitting in the Kia. Objectively, a reasonable person would have believed he was free to leave. However, Defendant was seized within the meaning of the Fourth Amendment when officers physically detained him, Moye, and R.G. following the discovery of marijuana in the Kia which required reasonable suspicion.

The plain view doctrine is one of the exceptions to the Fourth Amendment's warrant requirement. *United States v. Hawkins*, 646 Fed. App'x 254, 256 (3d Cir. 2016). To seize an item under the plain view doctrine: "(1) 'the officer must not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed;' (2) the object's 'incriminating character must also be immediately apparent;' and (3) the officer 'must also have a lawful right of access to the object itself.'" *Id.* (quoting *Horton v. California*, 496 U.S. 128, 136-37 (1990)). Thus, "if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been . . . no 'search' within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point." *Id.* (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). Here, Officer Kling was simply walking around the Kia during a mere encounter with Defendant and the other individuals. He noticed the marijuana from the sidewalk and could readily identify it as such based its appearance. Finally, Officer Kling had "a lawful right of access" to "that portion of

the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Id.* (quoting *Texas v. Brown*, 460 U.S. 730, 740 (1983)). Officer Kling or any member of the public could have seen the bag of marijuana in the seat-back pocket from outside the vehicle.

Once Officer Kling observed the marijuana, the officers had reasonable suspicion to detain Defendant, Moye, and R.G. As the detention of Defendant was occurring, Officer Monte noticed the firearm in the vehicle. This provided the officers with additional reasonable suspicion to detain Defendant and probable cause to support his arrest. Accordingly, Defendant's seizure and arrest were within the bounds of the Fourth Amendment. Furthermore, because the seizure was appropriate, Defendant's subsequent statements are not "fruit of the poisonous tree" and will not be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963).

### III. <u>Conclusion</u>

For the reasons stated herein, the court will deny Defendant's motion to suppress evidence and statements. (Doc. 39.) An appropriate order follows.

                                        s/Sylvia Rambo
                                        SYLVIA H. RAMBO
                                        United States District Judge

Dated: March 26, 2019